*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CARLOS GONZALEZ,

　　　　　Plaintiff-Appellant,

V

BEAUMONT HOSPITAL-FARMINGTON HILLS
formerly known as BOTSFORD HOSPITAL,
MICHAEL A. WARPINSKI, and BRIAN J. NEAL,

　　　　　Defendants-Appellees.

UNPUBLISHED
June 25, 2020

No. 347521
Oakland Circuit Court
LC No. 2017-160291-NH

Before: GLEICHER, P.J., and SAWYER and METER, JJ.

PER CURIAM.

In this medical malpractice action, plaintiff appeals by leave granted[1] the trial court's order denying his motion to amend the notice of intent to file claim (NOI) and complaint. Plaintiff asserts the trial court erred by denying leave to amend the NOI because the proposed amendments do not affect the substantial rights of the parties and the amendments are in the furtherance of justice. Plaintiff asserts the trial court abused its discretion in denying leave to amend the complaint on the basis of undue delay because delay alone is insufficient to warrant the denial of a motion to amend. We reverse and remand.

## I. FACTUAL BACKGROUND

This case arises out of plaintiff's claim that defendant Beaumont Hospital-Farmington Hills, formerly known as Botsford Hospital (Beaumont), is vicariously liable for the negligence of its emergency room physicians and staff for failing to timely diagnose plaintiff's stroke and to administer tissue plasminogen activator (tPA). In the NOI, plaintiff alleged that on February 22, 2015, at about 6:56 p.m., he experienced symptoms of a stroke and was transported to Beaumont's

---

[1] *Gonzales v Beaumont Hosp-Farmington Hills*, unpublished order of the Court of Appeals, entered June, 14, 2019 (Docket No. 347521).

Emergency Department at approximately 8:38 p.m.[2] Plaintiff was referred to neurology and underwent a consultation with Dr. Steven Hardy, a neurology resident.

Dr. Hardy concluded that plaintiff "was not a tPA candidate initially due to rapidly improving symptoms and unclear time of onset." Dr. Hardy spoke with the on-call attending physician, who agreed with the plan. Plaintiff was transferred to the Intensive Care Unit at 1:00 a.m. As a result of the stroke, plaintiff suffered "permanent non-function of his right arm with chronic significant pain; weakness in his right leg, and the inability to speak and retrieve words in a meaningful way." Plaintiff alleged that the failure of his treating physicians to administer tPA caused his neurological deficits.

Plaintiff's NOI also asserted that defendants Dr. Brian J. Neal, D.O.[3] and Dr. Matthew A. Warpinski, D.O., two emergency room physicians, were liable for plaintiff's resulting injuries. The NOI alleged that Beaumont had a duty to provide plaintiff with proper medical care and treatment, and to employ adequately trained physicians. Plaintiff alleged that Dr. Neal and Dr. Warpinski had a duty to properly diagnose him and treat him with tPA within 3 to $4^{1}/_{2}$ hours from the time plaintiff first started exhibiting symptoms. However, Dr. Neal and Dr. Warpinski breached this duty by failing to determine when plaintiff first started exhibiting symptoms and "[f]ailing to obtain a STAT neurological consult." Plaintiff alleged Beaumont is vicariously liable for failing to have policies to ensure plaintiff was treated by a board-certified neurologist, and for Dr. Neal and Dr. Warpinski's negligence. On February 6, 2017, plaintiff served defendants with the NOI, which contained the above factual allegations. On August 11, 2017, plaintiff filed a complaint, making the same arguments that were presented in the NOI.

On January 8, 2019, plaintiff filed a motion to amend his NOI and complaint to add two additional medical malpractice claims against Beaumont on the basis of negligent medical care provided by Dr. Steven Hardy and Dr. David Green, D.O., the attending neurologists. The proposed amendments did not seek to add Dr. Hardy and Dr. Green as defendants. Rather, the amendments alleged that Beaumont was vicariously liable for the actions of Dr. Hardy, Dr. Green, and other neurology staff that provided care and treatment to plaintiff on February 22, 2015.

Plaintiff asserted that during discovery, Dr. Warpinski was deposed and stated that Beaumont has a policy requiring the approval of a neurologist to administer tPA. Plaintiff claimed he was unaware of this policy until Dr. Warpinski's deposition. Plaintiff asserted "that the nature of the claim will not be changed, rather, only the identity of those who Plaintiff wishes to hold the hospital responsible for." Plaintiff also claimed the amendments would not be prejudicial to

_____

[2] Plaintiff asserts the neurology consultation report contains several inaccuracies. First, the neurology report indicates that the consultation occurred at 9:35 a.m., however, plaintiff was not admitted to the hospital until 8:38 p.m. Second, the report indicates that plaintiff began exhibiting symptoms at approximately 5 p.m. or 6 p.m., but plaintiff started exhibiting symptoms of a stroke at 7 p.m.

[3] We note that Dr. Neal was dismissed from the case in the trial court, and his dismissal is not challenged on appeal.

defendants because defendants were already on notice of plaintiff's claim that Beaumont is vicariously liable for the actions of its physicians.

On January 16, 2019, the trial court held a hearing on plaintiff's motion to amend the NOI and complaint. Plaintiff informed the trial court that the original complaint was filed on August 11, 2017, and trial was to set to start in May 2019. The trial court denied plaintiff's motion, reasoning:

> Having read the motion, the brief attached, as well as the responsive brief, I'm satisfied that this motion should be denied.
>
> One, I don't find that it would be in furtherance of justice to allow it. Two, the undue delay in this case; as counsel points out, and the Court notes, the complaint was filed August of 2017. It is now 17 months after this case began that the plaintiff now appears before the Court, and I might add four months before trial, and wants to amend the complaint, and add new causes.
>
> I'm satisfied it would be prejudicial to the Defendants, and there is no reasonable explanation for the undue delay in this case. The motion is denied.

This appeal follows.

## II. STANDARD OF REVIEW

"This Court reviews for an abuse of discretion a trial court's ruling on a motion for leave to file an amended pleading." *Kostadinovski v Harrington*, 321 Mich App 736, 742-743; 909 NW2d 907 (2017). "An abuse of discretion occurs when the decision resulted in an outcome falling outside the range of principled outcomes." *Hayford v Hayford*, 279 Mich App 324, 325-326; 760 NW2d 503 (2008). "A trial court . . . necessarily abuses its discretion when it makes an error of law." *Kostadinovski*, 321 Mich App at 743. This Court reviews "de novo matters of statutory construction, as well as questions of law in general." *Id*.

## III. ANALYSIS

Plaintiff argues the trial court erred in denying plaintiff's motion to amend the NOI because Beaumont was on notice of possible claims arising from the neurologists' failure to diagnose and treat plaintiff's stroke and, therefore, the proposed amendments do not affect Beaumont's substantial rights. Further, allowing the amendments to the NOI would be in the furtherance of justice because plaintiff made a good faith attempt to comply with the requirements of MCL 600.2912b. We agree.

MCL 600.2301 "may be employed to cure defects in an NOI." *Bush v Shabahang*, 484 Mich 156, 177; 772 NW2d 272 (2009). MCL 600.2301 states:

> The court in which any action or proceeding is pending, has power to amend any process, pleading or proceeding in such action or proceeding, either in form or substance, for the furtherance of justice, on such terms as are just, at any time before judgment rendered therein. The court at every stage of the action or proceeding

shall disregard any error or defect in the proceedings which do not affect the substantial rights of the parties.

To obtain relief under MCL 600.2301, a party must satisfy a "two-pronged test: first, whether a substantial right of a party is implicated and, second, whether a cure is in the furtherance of justice." *Bush*, 484 Mich at 177. "If both of these prongs are satisfied, a cure will be allowed on such terms as are just." *Id*. at 177-178 (quotation marks and citation omitted). In a medical malpractice case, ordinary defects in a NOI do not affect a party's substantial rights:

> Given that NOIs are served at such an early stage in the proceedings, so-called "defects" are to be expected. The statute contemplates that medical records may not have been turned over before the NOI is mailed to the defendant. Defendants who receive these notices are sophisticated health professionals with extensive medical background and training. Indeed, these same defendants are allowed to act as their own reviewing experts. A defendant who has enough medical expertise to opine in his or her own defense certainly has the ability to understand the nature of claims being asserted against him or her even in the presence of defects in the NOI. Accordingly, we conclude that no substantial right of a health care provider is implicated. [*Id*. at 178.]

The first prong of *Bush* is satisfied. Allowing plaintiff to add claims alleging Beaumont's vicarious liability for the neurologists' actions would not implicate Beaumont's substantial rights because the original NOI put Beaumont on notice of possible claims arising from the neurologists' failure to diagnose and treat plaintiff's stroke. The original NOI states that plaintiff received a referral for a neurology consultation, describes the neurology consultation report, and alleges the report contains multiple inconsistencies regarding when plaintiff began exhibiting symptoms. Specifically, the NOI indicated that plaintiff intended to bring suit against Beaumont for the negligence of its physicians in failing to administer tPA within an appropriate time period.

When the original complaint was filed, plaintiff believed the emergency department physicians, Dr. Neal and Dr. Warpinski, were in charge of making decisions regarding plaintiff's treatment. Dr. Warpinski was deposed and plaintiff learned that Dr. Neal and Dr. Warpinski were unable to administer tPA without a neurologist's approval, per Beaumont's policy. Certainly, Beaumont was aware of this policy. Further, Beaumont filed its witness list that identifies Dr. Hardy, Dr. Green, and "[a]ny and all physicians . . . involved in the care and treatment of [plaintiff], or with possible knowledge of the events at issue." After Beaumont filed its witness list, plaintiff filed his motion to amend the NOI and complaint to add two additional medical malpractice claims against Beaumont on the basis of the negligent medical care provided by Dr. Hardy and Dr. Green. Beaumont was clearly aware of the potential claims arising from the neurologists' actions because Beaumont was prepared to call Dr. Hardy and Dr. Green as witnesses before plaintiff filed his motion to amend the NOI and complaint. Therefore, allowing plaintiff to amend the NOI and complaint does not affect Beaumont's substantial rights. *Bush*, 484 Mich at 178.

"[T]he second prong of the test . . . is satisfied when a party makes a good-faith attempt to comply with the content requirements of § 2912b." *Id*. MCL 600.2912b(1) requires a plaintiff to give written notice at least 182 days before commencing an action alleging medical malpractice against a health professional or health facility. *Burton v Reed City Hosp Corp*, 471 Mich 745, 751;

691 NW2d 424 (2005). In determining whether a plaintiff made a good faith attempt to comply with MCL 600.2912b, "[t]he NOI, examined as a whole, must advise potential malpractice defendants of the basis of the claims against them." *Decker v Rochowiak*, 287 Mich App 666, 676; 791 NW2d 507 (2010) (quotation marks and citation omitted). "However, because the NOI comes at an early stage of the malpractice proceeding, the plaintiff does not have to craft the notice with omniscience." *Id*. (quotation marks and citation omitted).

Plaintiff's original NOI, considered as a whole, clearly set forth plaintiff's medical malpractice claim on the basis of Beaumont's failure to determine the time frame during which tPA could have been timely administered. Specifically, the NOI asserts Beaumont was vicariously liable for the actions of the emergency department physicians for failing to properly care for, diagnose, and treat plaintiff's condition. The NOI identifies the standard of care applicable to Beaumont, and to the doctors and nurses who participated in treating plaintiff, and alleges that the failure to treat plaintiff with tPA caused significant neurological and cognitive deficits. Dr. Warpinski and Dr. Neal are specifically named in the NOI. The NOI also references the neurology consult, identifying several inaccuracies within the neurology consultation report. Because plaintiff made a good faith attempt to comply with the requirements of MCL 600.2912b, allowing the proposed amendments to the NOI would be in the furtherance of justice. *Bush*, 484 Mich at 178.

Plaintiff also argues the trial court erred in denying plaintiff's motion to amend the NOI because plaintiff is not seeking to add an additional legal claim. Instead, plaintiff is seeking to clarify that Beaumont is also vicariously liable for the neurologists' failure to administer tPA. We agree.

In *Decker*, 287 Mich App at 671, the plaintiff filed a medical malpractice action on the basis of the defendant's failure to properly monitor plaintiff's glucose levels. After the plaintiff mailed the NOI and filed the complaint, the plaintiff sought leave to file an amended complaint to allege 17 ways in which the defendants breached the application standards of care. *Id*. The plaintiff asserted his motion to amend should be granted because:

(1) discovery remained open and experts had not been deposed, (2) the amendment merely clarified allegations and issues and was made possible after particular information was learned through the discovery process, (3) the clarifications "ultimately relate[ ] back to the underlying lynch pin [sic] of this entire case which is that they did not appropriately monitor and maintain this baby's glucose level," and (4) defendants would not be prejudiced by the amendment. [*Id*. (first alteration in original).]

The defendants opposed the motion, arguing the original NOI did not include the 17 allegations contained in the first amended complaint and that the allegations were barred by the expiration of the period of limitations. *Id*. at 671. The trial court permitted the plaintiff to file a supplemental NOI. *Id*.

On appeal, the defendants argued that the plaintiff should not have been permitted to assert the 17 allegations because they were not raised in the original NOI. *Id*. at 674. This Court disagreed, reasoning that the plaintiff's original claim was that the defendants failed to properly

treat the plaintiff's condition by monitoring his glucose levels. *Id*. at 677. This Court held that "[t]he basis of the claims against these defendants did not change," but instead, "[t]he allegations in the amended complaint merely clarified with more specificity the manner in which the standards of care were breached, which could be discerned more clearly with the aid of the discovery process." *Id*. at 680.

Here, in the original NOI, plaintiff specifically asserts Beaumont had a duty "to ensure the particular health care provider[s] [were] involved in the care of [plaintiff] including having in attendance a Board Certified Emergency Medicine specialist . . . [and] a Board Certified Neurologist, to a patient that presents with signs and symptoms of stroke in order to adequately treat said patient, including . . . the timely administration of tPA[.]" In addition, the NOI alleges that breaches of the standard of care caused plaintiff to suffer "significant neurological deficits due to the failure to administer tPA in the appropriate time window . . . ." The proposed amendments only seek to add that Beaumont is vicariously liable for the negligence of Dr. Hardy and Dr. Green for failing to timely administer tPA. Plaintiff did not learn that it was Beaumont's policy that emergency room physicians are unable to administer tPA without a neurologist's approval until Dr. Warpinski was deposed. The amendments do not seek to add a new allegation of malpractice. Rather, plaintiff's proposed amendments contain the exact same cause of injury contained in the original NOI and complaint. Further, "[t]he allegations in the amended complaint merely clarif[y] with more specificity the manner in which the standards of care were breached, which could be discerned more clearly with the aid of the discovery process." *Decker*, 287 Mich App at 680.

Plaintiff further argues the trial court abused its discretion in denying plaintiff's motion to amend his complaint on the basis of undue delay. We agree.

MCR 2.118(A)(2) governs the amendment of pleadings and provides that "[l]eave shall be freely given when justice so requires." "Therefore, a motion to amend should ordinarily be granted." *Kostadinovski*, 321 Mich App at 744. "A court must give a particularized reason for denying leave to amend a pleading, and acceptable reasons for denial include undue delay, bad faith or dilatory motive by the party seeking leave, repeated failures to cure deficiencies after previously allowed amendments, undue prejudice to the nonmoving party, and futility." *Id*. at 743. Delay alone does not warrant denial of a motion to amend. *Weymers v Khera*, 454 Mich 639, 659; 563 NW2d 647 (1997).

At the hearing on plaintiff's motion to amend, the trial court noted that "the complaint was filed August of 2017. It is now 17 months after this case began that the plaintiff now appears before the Court, and I might add four months before trial, and wants to amend the complaint, and add new causes of action." Therefore, the trial court found "it would be prejudicial to the Defendants, and there is no reasonable explanation for the undue delay in this case." Despite the trial court's statement to the contrary, plaintiff was not dilatory in seeking to add the amendments because plaintiff was unaware of Beaumont's policy requiring approval of a neurologist to administer tPA until Dr. Warpinski was deposed nearly 14 months after the complaint was filed. Moreover, even if there was delay in seeking to add the amendments, delay alone does not warrant denial of a motion to amend. *Weymers*, 454 Mich at 659.

Beaumont asserts plaintiff acted in bad faith in seeking to add the amendments in 2019, because plaintiff was aware of the potential claims against Dr. Hardy and Dr. Green at the time

the original complaint was filed. "[A] court may deny a motion to amend if the delay was in bad faith or if the opposing party suffered actual prejudice as a result." *Id*. Although plaintiff was aware that plaintiff underwent a neurology consult, because of inaccuracies contained within the neurology report, plaintiff claims it was unclear when the consultation took place. Plaintiff asserts that "[t]his is significant because if the consult took place outside of the 3 or 4.5 hour window that tPA is effective, then the neurologists' actions would have been of little significance." Further, at the time the original complaint was filed, plaintiff believed the emergency room physicians had the authority to administer tPA. It was not until Dr. Warpinski was deposed that plaintiff learned of Beaumont's policy requiring a neurologist's approval to administer tPA. There is nothing in the record to suggest plaintiff acted in bad faith in filing his motion to amend the complaint after Dr. Warpinski's deposition. Further, the references to the neurology consultation in the original complaint were sufficient to put Beaumont on notice of potential liability for the actions of the neurologists.

Plaintiff argues the proposed amendments would not cause Beaumont to suffer undue prejudice because plaintiff is not seeking to add additional claims. In response, Beaumont suggests allowing plaintiff to include the amendments would cause it undue prejudice "because it would require the development of [an] entirely separate defense in an extremely truncated period of time prior to trial." Prejudice, in the context of a motion for leave to amend, does not "mean that the allowance of the proffered amendment may cause the opposing party to ultimately lose on the merits." *Weymers*, 454 Mich at 659. "Rather, 'prejudice' exists if the amendment would prevent the opposing party from receiving a fair trial, if for example, the opposing party would not be able to properly contest the matter raised in the amendment because important witnesses have died or necessary evidence has been destroyed or lost." *Id*. Before plaintiff filed his motion to amend the NOI and complaint, Beaumont filed its expert witness list which identifies Dr. Hardy, Dr. Green, and [a]ny and all physicians . . . involved in the care and treatment of [plaintiff], or with possible knowledge of the events at issue." Therefore, the proposed amendments are not unduly prejudicial because Beaumont is sufficiently prepared to defend the claims against Dr. Hardy and Dr. Green.

Plaintiff asserts Beaumont erroneously contends that plaintiff's failure to file an amended affidavit of merit precludes plaintiff from amending his complaint. Plaintiff argues this Court has explicitly held that a plaintiff in a medical malpractice action is not required to file an additional affidavit of merit with an amended complaint. We agree.

"The amendment of a pleading is properly deemed futile when, regardless of the substantive merits of the proposed amended pleading, the amendment is legally insufficient on its face." *Kostadinovski*, 321 Mich App at 743-744. "MCL 600.2912d(1) states that in an action alleging medical malpractice . . . the plaintiff's attorney shall file with the complaint an affidavit of merit. . . ." *King v Reed*, 278 Mich App 504, 514; 751 NW2d 525 (2008) (quotation marks and citation omitted). In *King*, this Court examined the language of the applicable statute and found that "[b]y its own terms, MCL 600.2912d(1) does not require the filing of an additional affidavit of merit with an amended complaint." *Id*. at 515. Therefore, plaintiff was not required to file an

additional affidavit of merit with his amended complaint because MCL 600.2912d(1) only requires that an affidavit of merit be filed with the original complaint.[4] *Id*.

Beaumont also contends that a new affidavit of merit, signed by an expert in neurology, would not relate back to the date the original complaint was filed, and, therefore, the claims are barred by the statute of limitations. "[A]n issue becomes moot when an event occurs that renders it impossible for the reviewing court to grant relief." *CD Barnes Assoc, Inc v Star Haven, LLC*, 300 Mich App 389, 406; 834 NW2d 878 (2013). Beaumont's argument is moot because, even if plaintiff was required to filed an additional affidavit of merit with his amended complaint, a medical malpractice action is considered "commenced" even if the affidavit of merit filed with the complaint is defective. *Kirkaldy v Rim*, 478 Mich 581, 583; 734 NW2d 201 (2007). Therefore, the proposed amendments are not barred by the statute of limitations because the claims relate back to the date the original complaint was filed.

Beaumont argues that the proposed amendments are futile because plaintiff has failed to establish that the neurologists' failure to administer tPA proximately caused plaintiff's injuries. However, the issue of causation has not been decided by the trial court, and therefore, the issue of causation is not properly before this Court. *Mouzon v Achievable Visions*, 308 Mich App 415, 419; 864 NW2d 606 (2014).

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ Patrick M. Meter

---

[4] We note defendants' argument that *King* is factually distinguishable from this case, and therefore, does not apply. We disagree with defendants' argument because *King* involved the interpretation and legislative purpose of MCL 600.2912d, which did not depend on the particular facts of the case. See *King*, 278 Mich App at 513-520 (discussing the plain language of MCL 600.2912d and the legislative purpose of the statute without reference to the underlying medical facts of the case). While we are cognizant of defendant's argument that application of *King* in cases with facts similar to those in this case could "result in a perverse incentive for plaintiffs to plead medical malpractice cases as narrowly as possible, against only one doctor, and then expand the allegations to include baseless allegations against other healthcare professionals that would not need to be supported by affidavits of merit," this Court is required to follow binding precedent. See *W.A. Foote Mem Hosp v Jackson*, 262 Mich App 333, 341; 686 NW2d 9 (2004) ("The rule of stare decisis generally requires courts to reach the same result when presented with the same or substantially similar issues in another case with different parties.").